```
           IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF MARYLAND


JANE M. CASTLE              *
                            *
v.                          *   Civil Action No. WMN-13-1830
                            *
CAPITAL ONE, N.A.           *
                            *
                            *
   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *
```

**MEMORANDUM**

Before the Court is a Motion to Dismiss, filed by Defendant Capital One, N.A., ECF No. 5, and a Motion to Substitute Party filed by Richard Castle, as personal representative for the estate of Plaintiff, Jane M. Castle. ECF No. 14. For the reasons stated, the Court determines that no hearing is necessary, Local Rule 105.6, the Motion to Dismiss will be granted, and, no opposition having been filed, the Motion to Substitute will be granted.

I.  **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Jane Castle[1] ("Castle") received, together with her now-deceased husband, a $75,000.00 mortgage loan from Chevy

---

[1] Plaintiff's counsel filed a Statement of Death informing the Court that Jane Castle recently passed away. Plaintiff's counsel seeks to substitute Richard Castle, as the Personal Representative of the Estate of Jane Mary Castle, as the named Plaintiff in this case. ECF No. 14. Although the Court makes no determination at this juncture regarding Richard Castle's suitability as a putative class representative, it appears that he may, at the least, continue pursuit of Jane Castle's claims as personal representative of her estate. Accordingly, the

1

Chase Bank, a division of Capital One, N.A., in 2009, which was secured by a deed of trust (the "Deed of Trust") on a parcel of improved residential real property located in Hagerstown, Maryland (the "Castle property"). Pursuant to the Deed of Trust, the Castles were required to purchase homeowners' insurance.[2] Specifically, section 5 of the Deed of Trust states:

> Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. . . . If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in

---

Motion to Substitute will be granted.

[2] Although a copy of the Deed of Trust was not included with the Complaint, the Court may consider it without converting the Motion to Dismiss to a Motion for Summary Judgment. See Secretary of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007). Additionally, the Court will consider the insurance policy binder and correspondence to Castle as integral to and relied upon in the Complaint. See id. To the extent that Plaintiff asks this Court to consider news articles and testimony related to industry practices regarding force-placed insurance, the Court need not (and will not) rely upon those documents, as they are not related to the specific factual scenario as alleged by the Plaintiff.

>     the Property, or the contents of the Property, against
>     any risk, hazard, or liability and might provide
>     greater or lesser coverage than was previously in
>     effect. Borrower acknowledges that the cost of the
>     insurance coverage so obtained might significantly
>     exceed the cost of insurance that Borrower could have
>     obtained. Any amounts disbursed by Lender under this
>     Section 5 shall become additional debt of the Borrower
>     secured by this Security Instrument. These amounts
>     shall bear interest at the Note rate from the date of
>     disbursement and shall be payable, with such interest,
>     upon notice from Lender to Borrower requesting
>     payment.

ECF No. 5-2 at 7.

The Castles elected, at the time they received the loan, to pay for taxes and insurance separately from their loan and interest payments. The monthly loan payment, inclusive of interest, was fixed at $396.91. The loan has since been sold to Fannie Mae, and Defendant Capital One, N.A., is the servicer of the loan.

Castle obtained a homeowners' insurance policy from Nationwide Insurance ("the Nationwide Policy"), which identified Capital One as having an additional interest in the Nationwide Policy. The limits of the Nationwide Policy were approximately three times greater than the amount of the loan secured by the Deed of Trust. Castle paid the Nationwide Policy from November 15, 2011 until February 6, 2012, when the Policy lapsed as a result of Castle's inability to pay the premium. The Castle property remained uninsured through March 29, 2012. Castle obtained new insurance, through Farmers Insurance, effective

3

March 30, 2012, which again exceeds the loan amount by at least double ("the Farmers Policy").

Capital One, in a letter to Castle dated April 6, 2012, indicated that, as a result of the lapse in insurance coverage occurring on February 6, it "secured temporary insurance coverage in the form of a sixty day binder through AMERICAN SECURITY INSURANCE COMPANY" (the "ASIC Policy") to cover the period of lapse. The letter indicated that Castle would be charged for the temporary insurance coverage through her mortgage account. The policy limits on the ASIC Policy were more than three times the loan balance secured by the Deed of Trust, and cost substantially more than either the Nationwide or Farmers policies. Despite Castle's acquisition of the Farmers Policy, Castle alleges that Defendant "demanded that Castle retain the ASIC Forced Place Insurance," that the "ASIC forced place insurance covered periods of time in the past when there were no losses," and that, as a result of charges related to the ASIC Policy, Castle was unable to make her August 2012 loan payment to Capital One. Foreclosure proceedings were subsequently initiated against Castle in the Circuit Court for Washington County, Maryland.

According to Plaintiff, Capital One has an established practice of purchasing force-placed hazard insurance through ASIC. Specifically, Plaintiff alleges that Capital One entered

4

into a contract with non-party Assurant, Inc., the parent company of ASIC, through which it purchases force-placed insurance for its borrowers. Under the agreement with Assurant, Capital One receives a financial benefit "unrelated to any contractual or other bona fide interest in protecting the lender's interest in the mortgage loan" through inflated premium costs. Compl. ¶ 2. Plaintiff alleges that Capital One elected to purchase higher-priced insurance through Assurant in order to "giv[e] and receiv[e] 'kickbacks' in the form of purported fees, payments, unearned commissions, 'rebates' and/or other things of value from providers of force-placed insurance" and "fail[ed] to disclose the reasons for the high cost of force-placed insurance to Named Plaintiff and Class and Subclass members." Compl. ¶ 33.

Castle, through her "authorized attorney in fact Richard S. Castle," filed a putative class action Complaint against Capital One, purportedly "on behalf of all persons in Maryland who have or had a residential mortgage loan or line of credit originated and/or served by Defendant Capital One, National Association ("Capital One") and in connection therewith were required to pay for lender-placed or 'force-placed' hazard insurance policies provided by American Security Insurance Company [] and its related affiliates through Assurant, Inc." Compl. ¶ 1. Plaintiff's lengthy Complaint focuses mainly on general industry

5

practices in regard to force-placed insurance, and describes in detail recent regulatory efforts and investigations regarding such practices. Plaintiff states that she "does not challenge the rates of the force-placed hazard insurance as excessive nor Defendants' right to force-place insurance." Rather, she challenges "Capital One's decision to purchase force-placed hazard insurance from insurers, including Assurant and ASIC, that provide a financial benefit to itself and/or its affiliates and at prices that far exceed borrower-purchased hazard insurance (while providing substantially less coverage) and imposing charges unrelated to the provision of force-placed insurance on borrowers who were force-placed." Compl. ¶ 35.

In Count I, Plaintiff seeks a declaration on behalf of the proposed class that "Capital One has unfairly or deceptively failed to disclose the details of its arrangements with Assurant regarding force placed insurance," an order requiring Capital One to "disgorge all amounts [and benefits] that it has obtained or charged for unnecessary or duplicative force-placed insurance," and should be "enjoined from continuing to (i) charge for and collect unnecessary or duplicative force-placed insurance and (ii) receive monetary or other benefits from the sale of force placed insurance." Compl. ¶¶ 111-14. In Count II, Plaintiff alleges that Defendant has engaged in mortgage fraud "by knowingly making . . . deliberate omissions during the

6

mortgage lending process," including its financial relationship with Assurant and ASIC, which resulted in "economic and noneconomic damages" to the Plaintiff and class members. Compl. ¶¶ 125-26. Count III asserts a violation of the Maryland Consumer Debt Collection Act, alleging that "Defendant has asserted a debt collection claim with knowledge that the right does not exist" by attempting to collect charges for "unnecessary or duplicative force-placed insurance." Compl. ¶ 129. Finally, Count IV alleges that, by failing to disclose material facts related to the force-placed insurance, Capital One engaged in unfair or deceptive trade practices in violation of the Maryland Consumer Protection Act.

**II. LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. Edwards v. City of Goldsboro, 178 F.3d 232, 243 (4th Cir. 1999). To survive a 12(b)(6) challenge, a complaint need only present sufficient factual content to render its claims "plausible on [their] face" and enable the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and

7

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id.

Allegations sounding in fraud, however, are subject to heightened pleading standards pursuant to Federal Rule of Civil Procedure 9(b). Rule 9(b) requires that "the circumstances constituting the fraud," – specifically, "the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby," – "be stated with particularity." Haley v. Corcoran, 659 F. Supp. 2d 714, 721 (D. Md. 2009) (quoting Fed. R. Civ. P. 9(b); Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)). Where a fraud claim is based on concealment or omission of material facts, however, Rule 9(b) may be applied less strictly. See Shaw v. Brown & Williamson Tobacco Corp., 973 F. Supp. 539, 552 (D. Md. 1997) (quoting Flynn v. Everything Yogurt, Civ. No. HAR-92-3421, 1993 WL 454355, at *9 (D. Md. Sept. 14, 1993)).

### III. **ANALYSIS**

#### A. **Count II – Maryland Mortgage Fraud Protection Act**

Plaintiff alleges that Defendant committed fraud under the Maryland Mortgage Fraud Protection Act ("MMFPA") by making both

8

affirmative misrepresentations and omissions of fact during the mortgage lending process. See Compl. ¶ 123; Md. Code, Real Prop. § 7-402 ("A person may not commit mortgage fraud."). Under the MMFPA, mortgage fraud is defined, in relevant part, as

> any action by a person made with the intent to defraud that involves:
>
> (1) Knowingly making any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process; …
>
> (3) Knowingly using or facilitating the use of any deliberate misstatement, misrepresentation, or omission during the mortgage lending process with the intent that the misstatement, misrepresentation, or omission be relied on by a mortgage lender, borrower, or any other party to the mortgage lending process.

Md. Code, Real Prop. § 7-401(d). Although the MMFPA does not define the terms "misrepresentation" or "omission," under Maryland common law, "[f]raud encompasses, among other things, theories of fraudulent misrepresentation, fraudulent concealment, and fraudulent inducement." Ademiluyi v. PennyMac Morg. Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 530 (D. Md. 2013) (quoting Sass v. Andrew, 832 A.2d 247, 261 (Md. Ct. Spec. App. 2003)).

Plaintiff's theories of affirmative misrepresentation are somewhat difficult to decipher. Plaintiff does not clearly identify any affirmative misrepresentation made by the

Defendant.[3] To the extent that Plaintiff's allegation in her Complaint that "Capital One simply ignored [notice by the Plaintiff that she had obtained a new policy] and demanded that Castle retain the ASIC Forced Place Insurance" is intended to allege an affirmative misrepresentation, it fails to comply with the particularity requirements of Rule 9(b) and must be dismissed.

Plaintiff appears to focus her fraud claim for affirmative misrepresentations around alleged violations of the provisions of the Deed of Trust. Specifically, the Complaint frames as fraud Defendant's purchase of backdated insurance in an amount exceeding the outstanding balance of the loan. Plaintiff alleges that this conduct exceeded the authority granted to Defendant under the Deed of Trust. Although Defendant contends that the Deed of Trust permits the conduct with which Plaintiff takes issue – and the Court notes that the Deed of Trust does

---

[3] As Defendant notes, the only affirmative representation alleged in Plaintiff's Complaint was not a false representation, and thus cannot sustain an action for fraud. In paragraphs 8 and 83 of the Complaint, Plaintiff alleges that Capital One falsely informed her that she did not have hazard insurance on her property. The alleged falsity of Defendant's statement is, however, contradicted by Plaintiff's own admission that she did not purchase hazard insurance from the period between February 6, 2012 and March 30, 2012. See Compl. ¶¶ 83; 87. Although, as of the date of the letter, Plaintiff had obtained a new insurance policy, the letter specifically referred to the February lapse and cannot, therefore, be reasonably construed as the basis for a fraud claim. See ECF No. 11-1 at 2. Accordingly, Plaintiff has not alleged a specific affirmative misrepresentation.

not explicitly prohibit such conduct – the Court finds that the relevant language does not support conclusively either party's argument. Rather, as to whether Defendant was permitted to purchase backdated hazard insurance, and in what amount, is left ambiguous by the language of the Deed of Trust. Because there is a reasonable dispute as to interpretation of the mortgage language, the Court determines, to the extent that such determination is relevant to resolution of the ultimate issues, that it is not appropriate to determine the proper construction of the Deed of Trust on a motion to dismiss. See, e.g., Lane v. Wells Fargo Bank, N.A., No. C 12-04026 WHA, 2013 WL 1758878 (N.D. Cal. Apr. 24, 2013).

Issues of construction aside, however, Plaintiff has nonetheless failed to state a claim for an affirmative misrepresentation under the MMFPA. In order to state a claim for fraud based on an affirmative misrepresentation under Maryland law, a plaintiff must ordinarily allege "(1) that the one perpetrating the fraud made a false representation to the victim; (2) that its falsity was either known to the perpetrator or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the victim; (4) that the victim relied on the misrepresentation and had the right to rely on it; and (5) that the victim suffered compensable injury resulting from the

11

misrepresentation." Thomas v. Nadel, 48 A.3d 276, 282 n.18 (Md. 2012). Plaintiff has not, however, identified in her Complaint any specific affirmative misrepresentation or sufficiently alleged reliance. Accordingly, any claim for affirmative fraud under the MMFPA must be dismissed.

Plaintiff also asserts a claim for fraud based on alleged material omissions.[4] The crux of Plaintiff's fraud by omission claim appears to be her allegations that Defendant entered into an agreement with Assurant that "limited its ability to obtain insurance competitively" and enabled it to profit through kickbacks without informing the Plaintiff expressly of its arrangement. See ECF No. 8 at 13. Defendant contends that Plaintiff's fraud claims must be dismissed because (1) Plaintiff has not alleged that Defendant had a duty to disclose the relationship; and (2) Plaintiff has not pled reliance.

Generally, a mere failure to disclose a material fact does not constitute fraud under Maryland law. Rather, an alleged failure to disclose must ordinarily be accompanied by a legal duty to disclose. Ademiluyi v. PennyMac Mortg. Inv. Trust Holdings I, LLC, 929 F. Supp. 2d 502, 531 (D. Md. 2013). Where

---

[4] Plaintiff asserts, in her Opposition, that Defendant "does not address the omissions alleged by the Plaintiff as part of her claim of mortgage fraud," and therefore has waived the argument. ECF No. 8 at 19. Defendant's Motion to Dismiss, however, clearly addresses both affirmative misrepresentations and omissions. See ECF No. 5-1 at 7-19.

12

a fraudulent concealment claim is based on a duty to disclose, a plaintiff must ordinarily allege that:

> [T]he defendant owed a duty to plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

Id. at 531 (quoting Blondell v. Littlepage, 991 A.2d 80, 94 (Md. 2010)). Although Defendant alleges that it did not have any duty to disclose the alleged kickback scheme to the Plaintiff, the text of the MMFPA "creates a statutory duty to disclose and a related action for fraud." Id. at 531-32. Thus, Defendant had a "duty to disclose to its debtor material information with respect to the mortgage lending process." Id. at 532.

Defendant appears to assert that its business arrangements with third parties are not required to be disclosed during the mortgage lending process. Rather, because "the relationship between Plaintiff and Capital One is contractual, [] the only duties owed to Plaintiff are those set forth in the Deed of Trust and other Loan documents between the parties." ECF No. 5-1 at 15. In light of the statutory duty of disclosure imposed by the MMFPA, however, Defendant's argument appears best construed as an assertion that its relationship with Assurant was not a material fact requiring disclosure. Additionally, Defendant argues that Plaintiff has not pled, with sufficient

particularity under Fed. R. Civ. P. 9(b), the other elements of fraud, particularly reliance.

A fact is material if a reasonable person would rely on it in making a decision, or if "the maker of the misrepresentation knows the recipient is likely to regard [it] as important." Ademiluyi, 929 F. Supp. 2d at 530 (quoting Gross v. Sussex, Inc., 630 A.2d 1156, 1161 (Md. 1993)) (alterations omitted). Materiality of the alleged omissions raises a factual issue. See, e.g., Dunn v. Borta, 369 F.3d 421, 427 (4th Cir. 2004) (noting that the materiality of an omission "is a question of fact that should normally be left to a jury" and that, on a motion to dismiss, the court "review[s] the complaint only to determine that it . . . presents a plausible jury question of materiality"). The Court finds that the Complaint raises a plausible jury question of materiality – specifically, regarding the alleged kickback scheme – to survive a motion to dismiss.

More problematic at this stage, however, is the Complaint's treatment of the element of reliance. Although Plaintiff points out, in her Opposition, vague statements that include the term "reliance," see ECF No. 8 at 28-29. Plaintiff does not specifically allege in her Complaint that she relied on any omission of the Defendant in making her decision to either take out the loan in the first instance, or to permit her hazard insurance to lapse. To the contrary, Plaintiff explicitly avers

14

in her Complaint that she permitted her individually-purchased hazard insurance to lapse because she could not afford the payment. Plaintiff's Complaint is devoid of any allegation that she would have been substantially likely to elect a different lender – or take any alternative action – had she known of Defendant's arrangements with Assurant. She does not aver that she entered into a loan agreement with Defendant substantially on the basis of its hazard insurance policy. Thus, any allegation that she relied on any omission or concealment of facts by the Defendant in permitting her individual insurance policy to lapse is expressly contradicted by her Complaint. Although Plaintiff has surely pled damage – foreclosure proceedings were initiated when she could not pay the more expensive monthly payments – she has not reasonably related that damage causally to any omission made by the Defendant. Accordingly, her fraud claims will be dismissed.

**B. Count III – Maryland Consumer Debt Collection Act**

In Count III, Plaintiff asserts a violation of the Maryland Consumer Debt Collection Act, Md. Code, Com. Law § 14-201 <u>et seq.</u> ("MCDCA"). Specifically, Plaintiff alleges that, "[b]y charging and attempting to collect and/or actually collect[ing] for unnecessary or duplicative force-placed insurance," Defendant "asserted a debt collection claim" with knowledge that

15

the right did not exist in violation of § 14-202(8).  Compl. ¶ 129.

Plaintiff's claim in Count III seems to center on her dispute of the legitimacy of the additional debt that led to her default on her loan.  The MCDCA "only allows for recovery against creditors that attempt to collect debts when there is no right to do so."  Marchese v. JPMorgan Chase Bank, N.A., 917 F. Supp. 2d 452, 464 (D. Md. 2013).  Here, Defendant argues that, because Plaintiff admitted that she breached the terms of the Deed of Trust, thus triggering Defendant's "indisputabl[e] . . . right to purchase insurance to cover the lapse and to charge the cost to her Loan account," the assertion that Capital One "did not have the right to collect the amounts it charged for the lender-placed insurance is plainly wrong."  ECF No. 5-1 at 20.

Plaintiff does not allege specifically that Defendant took any action with the knowledge that any portion of Plaintiff's mortgage debt was invalid.  Although Plaintiff alleges that Capital One force-placed insurance on individuals who already had in place valid, personally-obtained insurance, see Compl. ¶ 8, Plaintiff's Complaint does not state a plausible claim that this happened in her case.  To the contrary, Plaintiff admits that, during 54 days of the 60-day period covered by the insurance binder purchased by Defendant, she permitted her insurance coverage to lapse.  Plaintiff does not allege that

16

Defendant charged her for additional, duplicative coverage when she was already insured. Accordingly, Plaintiff has failed to state a claim under the MCDCA.

### C. **Count IV – Maryland Consumer Protection Act**

In Count IV, Plaintiff asserts that Defendant violated the Maryland Consumer Protection Act, Md. Code, Com. Law § 13-101 et seq. ("MCPA") by engaging in unfair and deceptive trade practices resulting from the alleged misrepresentations and omissions discussed supra. Specifically, Plaintiff contends that Defendant violated §§ 13-301(1), 13-301(3), and 13-303(4). Pursuant to Md. Code, Com. Law § 13-301(1) and (3), unfair or deceptive trade practices include any "[f]alse . . . or misleading oral or written statement . . . or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers," or "[f]ailure to state a material fact if the failure deceives or intends to deceive." Under § 13-303(4), "[a] person may not engage in any unfair or deceptive trade practice . . . in: (4) [t]he extension of consumer credit."

As noted supra with respect to Plaintiff's claim for mortgage fraud, Plaintiff does not identify any affirmative misrepresentation that could support an action sounding in fraud. Thus, to the extent that Plaintiff's claim is based on an alleged violation of § 13-301(1), it must be dismissed.

17

Omissions are material under the MCPA "if a significant number of unsophisticated consumers would find that information important in determining a course of action." Bank of America, N.A. v. Jill P. Mitchell Living Trust, 822 F. Supp. 2d 505, 534 (D. Md. 2011) (quoting Green v. H & R Block, Inc., 735 A.2d 1039, 1059 (Md. 1999)). Additionally, to prevail on a damages action under the MCPA, "[c]onsumers must prove that they relied on the misrepresentation in question." Id. at 532 (citing Philip Morris Inc. v. Angeletti, 752 A.2d 200, 235 (Md. 2000)). "A consumer relies on a material omission under the MCPA where it is substantially likely that the consumer would not have made the choice in question had the commercial entity disclosed the omitted information." Id. at 535.

Plaintiff has not alleged with sufficient particularity her claim under the MCPA. Plaintiff makes a conclusory allegation that she and the putative class members "reasonably relied upon Capital One's fiduciary, equitable, and legal duty to service their loans safely, soundly, fairly, and without deception." Compl. ¶ 136. She further alleges that "[s]uch reliance is also inferred since it is perfectly reasonable to expect a mortgage servicer like Capitol [sic] One not to force borrowers into fictional defaults caused by Capital One's assessment of unnecessary or duplicative force-placed insurance." Id. She does not, however, allege what "duty" was owed by Capital One

18

that forms the basis for her reliance, that she was substantially induced in any manner by Defendant's failure to disclose its force-placed insurance arrangement with Assurant, or that she would have been likely to do anything differently had she known of the arrangement. For example, she makes no allegation that she may have elected a different lender, nor that she would have personally purchased insurance during the period of coverage lapse. Her conclusory use of the term "reliance" in her Complaint is insufficient to survive a motion to dismiss. Accordingly, Plaintiff has not stated a claim under the MCPA.

## D. Count I – Declaratory and Injunctive Relief

All that remains is Plaintiff's first count, in which she seeks declaratory and injunctive relief. Because Plaintiff's other three counts will be dismissed, however, so too must Count I. See, e.g., University Gardens Apts. Joint Venture v. Johnson, 419 F. Supp. 2d 733, 742 (D. Md. 2006) (noting that nothing in the Declaratory Judgment Act or Fed. R. Civ. P. 65 "provide a basis for an independent claim" where the court does not "otherwise have a valid cause of action before it"). Accordingly, Plaintiff's Complaint will be dismissed in its entirety.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss will be granted.  A separate Order will issue.

/s/
William M. Nickerson
Senior United States District Judge

DATED: January 15, 2014